UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JOHN A. WROBLEWSKI**,                              Case Number 1:10 CV 278

      Plaintiff,                              Judge John R. Adams

      v.                              REPORT AND RECOMMENDATION

**COMMISSIONER OF
    SOCIAL SECURITY,**

      Defendant.                              Magistrate Judge James R. Knepp II

### Introduction

Plaintiff John Wroblewski seeks judicial review of Defendant Commissioner of Social Security's decision to deny a period of disability insurance benefits (DIB) and supplemental security income (SSI). The district court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3).

This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). For the reasons stated below, the undersigned recommends the Commissioner's decision be reversed and remanded.

### Factual Background

Plaintiff, who was 46 years old at the time of the ALJ's decision, has graduated from high school and completed some college. (Tr. 24). He had past work experience as an industrial cleaning service technician, machinist, and sales representative. (Tr. 33).

*Physical Condition*

Plaintiff has right knee pain stemming from a 1997 work injury. An MRI revealed a medial meniscal tear. (Tr. 561). Plaintiff underwent arthroscopic surgery and a medial meniscectomy. (*See*

Tr. 494). An x-ray of the left leg in December 2005 showed lateral joint space narrowing and osteophyte formation. (Tr. 315).

In January 2004, an MRI of the thoracic spine showed degenerative disc disease with mild posterior bulging at T5-T6, T6-T7, and T7-T8. (Tr. 257). An MRI of Plaintiff's cervical spine the same month showed disc herniation at C5-C6 with nerve root impingement. (Tr. 258).

In April 2005, Plaintiff suffered a laceration of his left abdomen at work. An ultrasound of the lower extremity revealed acute deep vein thrombosis and an abdominal wall infection. (Tr. 294, 299). Plaintiff developed an MRSA staph infection, embolism and thrombosis of the vein, and pulmonary embolism. (Tr. 286).

In August 2005, Plaintiff developed another deep vein thrombosis in his left leg. (Tr. 320). He was instructed to wear compression stockings. (*Id.*).

On April 11, 2006, Dr. Edmond Gardner, a state agency physician, reviewed Plaintiff's medical records and assessed his physical residual functional capacity. (Tr. 485-92). Dr. Gardner indicated Plaintiff could lift twenty pounds occasionally, ten pounds frequently, stand or walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. (Tr. 486). He also stated Plaintiff could occasionally use foot controls on the left. (Tr. 487). Dr. Gardner also assessed postural limitations: Plaintiff could only occasionally climb ramps or stairs, stoop, kneel, crawl or crouch; and could never climb ladders, ropes, or scaffolds. (Tr. 487). Dr. Gardner based these conclusions on claimant's history of deep vein thrombosis, embolism, and an MRSA infection. (Tr. 486-87).

On June 12, 2006, Plaintiff saw Dr. Todd Hochman. (Tr. 494-95). Plaintiff reported his 1997 right knee injury and surgery. (Tr. 494). Dr. Hochman noted "well-healed arthroscopic scars" and

"medial joint space tenderness" in the right knee and Plaintiff's history of "left lower extremity DVT" and a "left knee intraosseous lipoma." (*Id.*). He diagnosed a right knee medial meniscal tear and noted he would "come up with a more comprehensive plan" after he had "obtained an reviewed the previous medical records." (Tr. 495).

On November 22, 2006, Dr. Hochman wrote a letter stating Plaintiff "would have difficulty sitting or standing for periods of time, lifting and carrying heavier objects, walking long distances as well as with any job activities which require significant exertion." (Tr. 530). He stated Plaintiff had "a past history of asthma, right knee medial meniscal tear, left knee intraosseous lipoma, deep vein thrombosis as well as degenerative disc disease throughout the cervical and lumbar spine." (*Id.*). Dr. Hochman noted that although Plaintiff had undergone surgery, he "remains symptomatic" and requires pain medication. (*Id.*).

On October 3, 2006, Dr. Elizabeth Das, a state agency physician, reviewed Plaintiff's updated medical records and affirmed Dr. Gardner's residual functional capacity assessment. (Tr. 529).

On April 23, 2008, Dr. Wayne Sevier, Plaintiff's treating physician, wrote a letter summarizing Plaintiff's medical history and treatment.  He stated:

> [Plaintiff] received a cut on his left abdomen while at work in April, 2005. This wound became infected with a serious infection called MRSA. These bacteria cause life threatening infections. He became septic and was admitted to Marymount Hospital's Intensive Care Unit. He developed a clot in his left leg, which became infected. He also developed pulmonary emboli, also septic in nature.

(Tr. 539). Dr. Sevier explained that because of these medical problems, Plaintiff's leg swells if he is on his feet more than ten to fifteen minutes. He explained this is so "because the clot and infection in the veins of his leg have destroyed his veins, which prevents fluid from going back up his leg."

3

(*Id.*). Dr. Sevier opined Plaintiff cannot do a job that requires him to stand longer than ten to fifteen minutes, and because he is on a diuretic, he needs to have access to, and be able to use bathroom facilities as needed. Dr. Sevier also stated Plaintiff's leg condition prevent him from using stairs or ladders.  In addition, because of Plaintiff's past pulmonary embolism, he needs an inhaler or aerosol machine.  He would need to be able to use them at will. Dr. Sevier opined that cold air causes Plaintiff asthma attacks, so he cannot work in a cold environment. Finally, because of Plaintiff's use of a blood thinner, Dr. Sevier stated Plaintiff cannot work in an environment which could cause him cuts or bruises. (*Id.*).

On August 25, 2008, Dr. Sevier completed a physical residual functional capacity assessment form. (Tr. 605-09). He stated he sees Plaintiff monthly, and has diagnosed him with pulmonary embolism, sepsis, and deep vein thrombosis.  He described Plaintiff's prognosis as "good." Dr. Sevier stated Plaintiff has chest pain and pressure at rest and left leg swelling that increases when he stands and walks. He stated Plaintiff's medications were Allegra, Flovent, Albuteral and Lasix, which makes Plaintiff need to urinate frequently. (Tr. 605). Dr. Sevier assessed that Plaintiff was capable of low stress jobs, and stated he could walk one city block without rest or severe pain. (Tr. 606). He stated Plaintiff can sit for one hour at a time before needing to get up; stand for 30 minutes at a time before needing to sit down or walk around; and could stand or walk less than two hours total in an eight-hour workday and sit about four hours total in an eight-hour workday. (Tr. 606-07). Dr. Sevier noted Plaintiff needs a period of walking for five minutes every hour, and needs a job that permits shifting positions (from sitting, standing, or walking) at will. (Tr. 607). Dr. Sevier indicated Plaintiff will need two unscheduled breaks of five to ten minutes during an eight-hour workday. If Plaintiff were to sit, his legs would need to be elevated above his waist for 25% of an eight-hour

4

workday. Dr. Sevier indicated Plaintiff could lift and carry: less than ten pounds frequently; ten pounds occasionally; twenty pounds rarely; and fifty pounds never. (Tr. 607). Dr. Sevier stated Plaintiff could twist frequently, stoop or climb stairs occasionally, and crouch or squat and climb ladders rarely. (Tr. 608). Dr. Sevier also imposed a restriction against cold and heat, humidity, dust and fumes because they would aggravate Plaintiff's breathing. Finally, Dr. Sevier indicated Plaintiff is likely to be absent from work approximately three days per month as a result of his impairments. (Tr. 608).

*Mental Condition*

On March 1, 2006, Dr. Herschel Pickholtz examined Plaintiff and assessed his mental capacity. (Tr. 478-84). Plaintiff told Dr. Pickholtz he gets up at 6:30 a.m. and does chores including vacuuming, laundry, and grocery shopping.  (Tr. 480). Plaintiff reported he checks his email, plays games on the computer ,and reads newspapers and magazines for about two hours each day. (*Id.*). He stated he keeps his inhaler with him because he becomes anxious he will have a breathing problem. (*Id.*). He also reported having a fear of being around large groups of people because he's afraid it may trigger an asthmatic response. He does leave the house, but stays away from large groups and people who wear perfume. (Tr. 480-81). Dr. Pickholtz stated Plaintiff's affect was "a little bit" constricted and his mood was "a little bit" depressed. (Tr. 481). He saw "no severe signs of autonomic anxiety" during the evaluation and noted Plaintiff reported "mild anxiety difficulties" when he has to be around large groups of people. (*Id.*). Plaintiff's level of intellectual functioning was in the average to high average range. (Tr. 482). Dr. Pickholtz diagnosed mild depressive disorder and mild to moderate phobia relative to being around a large group of people, secondary to his breathing difficulties. (Tr. 483). Plaintiff's "overall ability to relate to co-workers and others

seemed to fall within the mild range of impairment unless he has to be around a large group of people and it deteriorates secondary to his fears" and his "overall abilities to handle eight-hour work activities relative to pace, consistency and reliability, from a psychological perspective, seemed to fall within the mild range of impairment as a result of his phobic complaints."  (Tr. 484). Dr. Pickholtz believed "with support of counseling and some medications [Plaintiff] should be able to return to work." (Tr. 483).

On March 15, 2006, Leslie Rudy, a state agency medical consultant, reviewed Plaintiff's medical records and assessed his mental functioning. (Tr. 260-72).  She noted affective disorders and anxiety-related disorders, specifically mild depressive disorder and a mild to moderate phobia of being around large groups of people. (Tr. 260, 263, 265).  Rudy addressed the "B" criteria of the listings and noted mild limitations in restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. (Tr. 270). This evaluation was based on Dr. Pickholtz's consultative examination. (Tr. 272). On October 2, 2006, Joan Williams, a state agency psychologist, reviewed Plaintiff's medical records and affirmed the psychological functional capacity. (Tr. 528).

On February 23, 2008, psychologist Donald Weinstein examined Plaintiff. (Tr. 618-22). Dr. Weinstein noted Plaintiff had no symptoms of cognitive dysfunction and presented with average intelligence. (Tr. 619). He had a "great deal of overt anxiety". (Tr. 620). "He described always being afraid to leave his home for fear of re-injury and re-infection." (*Id.*). Dr. Weinstein noted Plaintiff had become depressed and had "vegetative symptoms of depression." (*Id.*). Dr. Weinstein diagnosed "Major Depressive Disorder, Single Episode, Mild" and "Generalized Anxiety Disorder" and opined

6

Plaintiff is "temporarily and totally disabled" as a result of either disorder independently. (Tr. 621-22). Dr. Weinstein reported Plaintiff needed psychological help but denied being interested in it. (Tr. 622).

Shaun Carpenter, a counselor in Dr. Weinstein's office, saw Plaintiff on July 18 and September 18, 2008 for individual psychotherapy. (Tr. 623-24). He noted Plaintiff was anxious and angry. (*Id.*). Plaintiff declined the services of a psychiatrist. (Tr. 623).  At the September session, "[t]he possibility of Voc Rehab was presented" and Plaintiff expressed interest. (Tr. 624).

*Plaintiff's Testimony*

Plaintiff testified his daily activities include using the dishwasher, cooking dinner, light household cleaning, grocery shopping, and yard work. (Tr. 25-26). He testified he can walk for 200 to 300 yards at a time, stand for fifteen to twenty minutes at a time, and sit for "a couple hours" at a time. (Tr. 28-29). He testified he needs to elevate his legs approximately every two hours for fifteen to thirty minutes to alleviate swelling. (Tr. 32).

**Procedural Background**

Plaintiff filed an application for SSI and DIB on August 30, 2005, alleging disability as of April 17, 2005. (Tr. 99-109). Plaintiff's claim was denied initially and on reconsideration. (Tr 40-41). Plaintiff thereafter sought a hearing. An ALJ held a videoconference hearing on November 21, 2008, at which Plaintiff appeared with his attorney and testified. (Tr. 19-39). Gene Burkhammer, a vocational expert (VE), also testified at the hearing.

In a written decision dated March 18, 2009, the ALJ denied Plaintiff's disability claim. (Tr. 10-18). The ALJ found Plaintiff had severe impairments of peripheral vascular disease, reactive airway disease, degenerative disc disease of the cervical and thoracic spine, degenerative joint

disease of the knees, obstructive sleep apnea, and obesity. (Tr. 12). She also found Plaintiff had mild

depression and anxiety. (*Id.*). She then found Plaintiff had:

> the residual functional capacity to perform a reduced range of sedentary work . . .
> The claimant can do the following: lift 20 pounds occasionally and 10 pounds
> frequently; stand or walk for 10-15 minutes at a time for a total of no more than 2
> hours in an 8 hour day; can occasionally push or pull with the lower extremities;
> never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs;
> occasionally stoop, kneel, crouch or crawl; never deal with large groups; must
> periodically alter position; never work in temperature extremes and need access to
> a restroom; must be allowed to use an inhaler at work; and must elevate legs during
> breaks and lunch.

(Tr. 14). After determining Plaintiff could not perform any past relevant work, the ALJ concluded

Plaintiff was not disabled because he could perform a significant number of jobs despite his

impairments. (Tr. 16-18). The ALJ based this conclusion on the VE's testimony that a person with

the given limitations could perform certain sedentary unskilled occupations.  (Tr. 17). The ALJ's

March 18, 2009 decision (Tr. 10-18) became the final decision of the Commissioner following the

Appeals Council's denial of review on December 4, 2009.  (Tr. 1-5).  *See* 20 C.F.R. §§ 404.981,

416.1481. Plaintiff then filed the instant case seeking judicial review of the ALJ's decision on

February 8, 2010. (Doc. 1).

## Standard of Review

In reviewing the denial of Social Security benefits, the Court "must affirm the

Commissioner's conclusions absent a determination that the Commissioner has failed to apply the

correct legal standards or has made findings of fact unsupported by substantial evidence in the

record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence

is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health &*

*Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact

if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474

F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a

preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as

substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc.

Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## Standard for Disability

Eligibility for SSI is predicated on the existence of a disability. 42 U.S.C. § 1382(a).

"Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months." 20

C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step

evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a claimant is

disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## Discussion

Plaintiff raises three objections to the ALJ's decision:

1.    The ALJ's physical residual functional capacity (RFC) determination is not supported by substantial evidence because the ALJ failed to accommodate restrictions recommended by Plaintiff's treating physicians and state agency physicians;

2.    The ALJ failed to give controlling weight to Dr. Weinstein regarding Plaintiff's mental condition;

3.    The evidence presented by the vocational expert was flawed.

Because the ALJ violated the requirement that "good reasons" be given for the weight given to Plaintiff's treating physician regarding Plaintiff's physical capacity, the undersigned recommends this case be reversed and remanded.

## RFC Determination

A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. *Id.* §§ 404.1529; 416.929.

An ALJ must also consider and weigh medical opinions. *Id.* §§ 404.1527;  416.927. Plaintiff argues the ALJ erred in failing to accommodate restrictions his treating physicians and state agency physicians attested to.

Generally, the medical opinions of treating physicians are accorded greater deference than those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); Social Security Ruling (SSR) 96-2p. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment§ and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)). A treating physician's opinion is given "controlling weight" if supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Id.*

Even if the treating physician's opinion is not entitled to "controlling weight," there is nevertheless a rebuttable presumption that it deserves "great deference" from the ALJ. *Id.* Importantly, the ALJ must give "good reasons" for discounting treating physicians' opinions, "reasons that are sufficiently specific to make clear to any subsequent reviewers the weigh the adjudicator gave the treating source's medical opinion and the reasons for that weight." *Id.* (internal citation and quotation omitted).  The purpose of the "good reason" rule is to ensure adequacy of review and to permit the claimant to understand the disposition of his case. *Id.* In determining how much weight to give to a physician's opinion, the ALJ must consider the length of the treatment relationship, frequency of examination, the extent of the physician's knowledge of the impairments,

11

the amount of relevant evidence supporting the physician's opinion, the extent to which the opinion is consistent with the record as a whole, whether or not the physician is a specialist, and other relevant factors tending to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d)(2)-(6); 416.927(d)(2)-(6). The Court will reverse and remand a denial of benefits even though "substantial evidence otherwise supports the decision of the Commissioner," when the ALJ fails to give good reasons for discounting the opinion of the claimant's treating physician. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-46 (6th Cir. 2004); *see also Rogers*, 486 F.3d at 243 (failure to follow procedural requirement "of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record").

State agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(f)(2)(I); 416.927(f)(2)(I).

Plaintiff argues the ALJ failed to accommodate his sitting restrictions, need to elevate his leg above his waist, and need for bathroom breaks.[1]

### State Agency Physicians

The ALJ stated she gave "significant" weight to Dr. Das' opinion as it is "consistent with the record as a whole." (Tr. 16). Plaintiff argues the state agency expert estimates Plaintiff can sit,

---

[1] Plaintiff argues the ALJ did not appropriately accommodate his need to access a restroom. However, the RFC determination specifically states: "need access to a restroom." (Tr. 14). Plaintiff contends this restriction, along with others the ALJ failed to take into account erode the unskilled sedentary occupational base, citing Social Security Regulation 96-9p. Because remand is required regarding the ALJ's RFC determination, it is unnecessary to reach this second argument.

stand, or walk for a total of about six hours in an eight-hour workday but "the ALJ's RFC makes no references to claimant's restrictions in terms of sit/stand capabilities." (Doc. 13, at 4).  He quotes SSR 96-9p which states: "If an individual is unable to sit for a total of 6 hours in an 8-hour workday, the unskilled sedentary occupational base will be eroded." 1996 WL 374185, *6. Plaintiff seems to understand Dr. Gardner to have limited him to sitting, standing, *and* walking for six hours total in an eight-hour workday. However, Dr. Gardner – affirmed by Dr. Das – found Plaintiff could stand, walk, *or* sit for about six hours in an eight-hour workday. (Tr. 486, 529). Therefore, the RFC is not inconsistent with Drs. Das and Gardner's findings.

### Treating Physicians

The ALJ stated she accommodated most of the restrictions recommended by Plaintiff's treating physicians Drs. Hochman and Sevier,[2] but did not find them completely supported:

> Todd S. Hochman, M.D., the claimant's treating physician, opined that the claimant has difficulty sitting or standing for periods of time, lifting and carrying heavier objects, walking long distances as well as with any job activities which require significant exertion. Another treating physician, Wayne H. Sevier, D.O., opined that the claimant is unable to stand more than 10-15 minutes, sit for 1 hour at a time, no heavy work, must be allowed to access restroom as needed, no exposure to cold, no work which can cause cut or bruises, no ladders or stairs and needs to be allowed to use his inhaler as needed. Although these opinions are overly pessimistic in light of clinical and laboratory findings and inconsistent with conservative treatment records, the undersigned nonetheless accommodated most of these restrictions in the residual functional capacity assessment defined above.

(Tr. 16 (record citations omitted)).

### Dr. Sevier

In August 2008, Dr. Sevier completed a physical functional capacity form and stated, *inter alia*, Plaintiff could sit for about four hours in an eight-hour workday, and Plaintiff would need to

---

[2] Defendant does not dispute that Drs. Hochman and Sevier are treating physicians.

elevate his leg above his waist for 25% of the workday. (Tr. 607). Plaintiff also testified he has to

elevate his leg every two hours to relieve swelling. (Tr. 32). The VE testified that adding the

requirement that adding the requirement that Plaintiff be able to frequently elevate his legs would

eliminate the available jobs. (Tr. 35).

In *Friend v. Commissioner of Social Security*, 375 F. App'x 543, 551 (6th Cir. 2010), the

Sixth Circuit explained a conclusory explanation for discounting a treating physician's opinions is

insufficient:

> The ALJ's rationale for discounting [the treating physician's] opinion was expressed
> simply as "the testimony of [the non-treating physician], which would allow the
> claimant to stand/walk for one hour [at a] time to a total of six hours in an eight hour
> workday, is more consistent with the objective clinical findings," and "there is no
> basis for [the treating physician's] conclusion that the claimant can stand/walk for
> only one hour in a day." This is not "sufficiently specific" to meet the requirements
> of the rule on its face, inasmuch as it neither identifies the "objective clinical
> findings" at issue nor discusses their inconsistency with [the treating physician's]
> opinion.

The court then concluded: "Put simply, it is not enough to dismiss a treating physician's opinion as

"incompatible" with other evidence of record; there must be some effort to identify the specific

discrepancies and to explain why it is the treating physician's conclusion that gets the short end of

the stick." *Id.* at 552.

The ALJ's reasoning here for rejecting Dr. Sevier's opinion is even less clear than that in

*Friend.* In her summary of Dr. Sevier's opinion, the ALJ does *not* note his opinion on the physical

RFC questionnaire that Plaintiff elevate his legs for 25% of an eight-hour workday nor his opinion

that Plaintiff can only sit for four hours in an eight-hour workday.[3]  With regard to Dr. Sevier's (and

---

[3] The ALJ's summary of Dr. Sevier's restrictions appears to come exclusively from his April
2008 letter.  (*See* Tr. 16, 539-40). Although the ALJ cites Exhibit 41F – Dr. Sevier's August 2008
RFC assessment – she does not list or discuss the limits present therein or her reasons for accepting

14

Dr. Hochman's) opinion, the ALJ simply states: "Although these opinions are overly pessimistic in light of clinical and laboratory findings and inconsistent with the conservative treatment records, the undersigned nonetheless accommodated most of these restrictions in the residual functional capacity assessment defined above." (Tr. 16). But the ALJ did not make "some effort to identify the specific discrepancies", *Friend*, 375 F. App'x at 551, between Dr. Sevier's restrictions that she *did not* accommodate and the "clinical and laboratory findings" she alleges show otherwise (Tr. 16). Her reasons for rejecting these two limitations by Plaintiff's treating physician are unclear, and therefore not "sufficiently specific" enough to meet the requirements of the rule.

This is also not a matter of harmless error. A violation of the treating physician rule is harmless error if: 1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; 2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or 3) "where the Commissioner has met the goal of § 1527(d)(2) – the provision of the procedural safeguard of reasons – even though she has not complied with the terms of the regulation." *Wilson*, 378 F.3d at 547. Dr. Sevier's opinion is not "patently deficient" and the ALJ did not adopt his leg elevation restriction. Moreover, this is not a case where the ALJ's discussion of other opinions or Plaintiff's physical problems makes clear the basis on which Dr. Sevier's restriction was rejected. Rather, the ALJ simply stated Dr. Das' opinion was "consistent with the record as a whole." (Tr. 16). *See Friend*, 375 F. App'x at 552 (conclusory discussion of another opinion insufficient to show harmless error).

Although the ALJ's decision may be otherwise justified by the record, it lacks substantial evidence because the ALJ violated the "good reasons" requirement. *Wilson*, 378 F.3d at 543-46;

_____

or rejecting them. (*See* Tr. 16, 605-09).

15

*see also Rogers*, 486 F.3d at 243. Therefore, remand is required for the ALJ to explain her reasoning.

### *Dr. Hochman*

Dr. Hochman noted Plaintiff "would have difficulty sitting or standing for periods of time." (Tr. 530). Dr. Hochman's letter is not specific as to the amount of time, but the ALJ's decision accommodated a concern about sitting for long periods of time. Although a full range of sedentary work would require prolonged sitting, the VE testified the jobs he identified would permit Plaintiff to alternate periodically between sitting and standing. (Tr. 35). The ALJ's decision was therefore not inconsistent with Dr. Hochman's opinion.  This question can again be addressed on remand, if necessary.

## Mental Condition

Plaintiff argues the ALJ violated the treating physician rule by not giving specific reasons for rejecting Dr. Weinstein's opinion and not giving that opinion controlling weight. Defendant responds Dr. Weinstein is an examining, not treating physician.

Social Security regulations distinguish between different types of medical sources. A "treating source" is "[the claimant's] own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant] with medical treatment or evaluation, and who has, or had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. §§ 404.1502; 416.902. A "nonexamining source" is a medical source "who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case." *Id.* A "nontreating source" is a medical source "who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]." *Id.*

Plaintiff has submitted evidence of only one visit with Dr. Weinstein. Because there was no ongoing treatment relationship, Dr. Weinstein is not a treating physician and his opinions are not entitled to presumptive deference. *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 572 (1989) ("[The doctor] is not a treating physician given the fact that he evaluated the claimant on only one occasion.").

In assessing Plaintiff's mental limitations, the ALJ explained:

> Donald J. Weinstein, Ph.D., a psychologist who performed a consultative examination of the claimant at the request of the claimant's attorney in February, 2008, concluded that the claimant "is totally disabled as a result of either the major depressive Disorder of the generalized anxiety disorder in and of itself." Determinations of disability are reserved to the commissioner, however, and this opinion is contrary to Dr. Weinstein's diagnosis of mild depression. Greater weight is accorded to the opinion of state agency medical psychologist Dr. Williams because she is a specialist in the field of mental health and her opinion is more consistent with the record as a whole. The undersigned also considered the opinion of Herschel Pickholtz, ED.D., a psychologist who performed a consultative examination of the claimant in March 2006, who persuasively opined that the claimant's ability to relate to co-workers and others falls within the mild range of impairment unless he has to be around a large group of people and his overall abilities to handle eight-hour work activities relative to pace, consistency and reliability fall within the mild range of impairment.

(Tr. 13).

Because both Drs. Pickholtz and Weinstein were one-time examining physicians, their opinions started on an equal playing field. The ALJ determined Dr. Pickholtz's opinion, and the opinion of Dr. Williams, a state agency psychologist, were more consistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(d); 404.927(d) ("consistency" a factor in determining how much weight to give to physicians). This decision is supported by substantial evidence. No other physician opined Plaintiff's mental condition was disabling. A state agency reviewing physician, Dr. Williams, and a state agency examining physician, Dr. Pickholtz, opined Plaintiff's primary

17

difficulty would be dealing with large groups. (Tr. 265, 272, 480, 528). The ALJ accommodated this restriction in her RFC determination. (Tr. 14 ("never deal with large groups")). The finding that Plaintiff's mental conditions presented no more than mild impairments is also supported by Plaintiff's self-reported daily activities of cooking, cleaning, yard work, using the computer, and grocery shopping. As the ALJ pointed out elsewhere in her opinion, "An office note, dated March 8, 2006, reflects that the claimant reported helping his 'friend put doors in remodeling' (Exhibit 26F)." (Tr. 15, citing Tr. 509).

The ALJ rejected Dr. Weinstein's opinion of total disability because "[d]eterminations of disability are reserved to the commissioner . . . and this opinion is contrary to Dr. Weinstein's diagnosis of mild depression." (Tr. 13). Plaintiff argues "[i]t is a mischaracterization on the part of the ALJ to describe Dr. Weinstein's diagnosis as mild depression. The diagnosis is of a Major Depressive Disorder." (Doc. 13, at 7).  However, Dr. Weinstein's full diagnosis was that Plaintiff met the DSM-IV criteria for "Major Depressive Disorder, Single Episode, Mild." Major Depressive Disorder can be of varying levels of severity: mild, moderate, severe without psychotic features, severe with psychotic features. Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders, 369-70 (4th ed. text rev. 2000) (DSM-IV-TR). The DSM-IV-TR describes mild severity as "characterized by the presence of only five or six depressive symptoms and either mild disability or the capacity to function normally but with substantial and unusual effort." *Id.* at 412. Therefore, although the ALJ could have been more artful in her wording, she did not err in discounting Dr. Weinstein's opinion of total disability based on the fact he had diagnosed mild severity major depressive disorder. Additionally, the ALJ was correct that she is not required to accept a physician's opinion regarding disability. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir.

18

2004) ("The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)).

With conflicting medical opinions, it is the ALJ's duty – not this Court's – to weigh and resolve conflicts in the evidence. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (court may not  "may not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility"). The ALJ considered all the evidence and explained the reasons for the weight given to each medical opinion. Therefore, the ALJ's decision regarding Plaintiff's mental impairments is supported by substantial evidence and not contrary to law.

**Vocational Expert**

Plaintiff argues two of the jobs the VE identified do not conform to his restrictions. Because the undersigned has concluded remand is necessary for the ALJ to explain the weight given to Dr. Sevier's opinion and this may affect the ALJ's RFC determination, there is no need to reach Plaintiff's challenge to the VE's testimony.

**Remand for Rehearing**

Congress has authorized reversal under the fourth sentence of 42 U.S.C. § 405(g) "with or without remanding the cause for a rehearing." *See Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174-75 (6th Cir. 1994) (citing *Sullivan v. Hudson*, 490 U.S. 877, 880 (1989)). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking," and where no factual issues remain unresolved in the case. *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994) (quoting *Faucher,* 17 F.3d at 176). In all other instances, remand under the fourth sentence for rehearing is required. *See*

19

*Faucher,* 17 F.3d at 175-76.  Evidence of disability in this matter is not overwhelming.  Remand for rehearing is required.

### Conclusion and Recommendation

Following review of the arguments presented, the record, and applicable law, this Court finds the Commissioner's decision denying SSI and DIB not supported by substantial evidence.  The undersigned therefore recommends the Commissioner's decision be reversed and remanded for the ALJ to fully explain the weight given to Dr. Sevier's opinion.

s/James R. Knepp II

United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).